902 F.2d 1565
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
INTERCONTINENTAL METALS CORPORATION; Intercontinental
Metals Trading Corporation, Plaintiffs-Appellants,
v.
ERLANGER & COMPANY, INC., Defendant-Appellee.
 No. 89-2626.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1989.
Decided May 1, 1990.
As Amended May 10, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-87-317-M)
 Daniel Gray Clodfelter, Moore and Van Allen, Charlotte, N.C. (argued) for appellants; W.B. Hawfield, Jr., David S. Walls, Moore & Van Allen, Charlotte, North Carolina, on brief.
 Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, New York City (Argued) for appellee; George Weisz, Joseph N. Lamport, Cleary, Gottlieb, Steen & Hamilton, New York City, Langdon M. Cooper, Mullen, Holland & Cooper, P.A., Gastonia, N.C., on brief.
 W.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 The appellant, International Metals Trading Company (IMTC), a wholly-owned subsidiary of Intercontinental Metals Corporation (IMC), as bankruptcy debtor in possession (see 11 U.S.C. Sec. 1108) appeals the order of the district court denying recovery of pre-bankruptcy petition payments made to the appellee, Erlanger & Company, Inc. for two large shipments of foreign steel. The appellant argues that it paid approximately $2.4 million in excess of the value of steel it actually received, and, therefore, such payments represented preferential transfers, void under Section 547 of the Act. In its findings of fact and conclusions of law, the bankruptcy court held, inter alia, that payments made by IMTC, pursuant to its contracted obligations to Erlanger, were made in satisfaction of present or antecedent debts constituting "value" pursuant to 11 U.S.C. Sec. 548(d)(2)(A), and as such could not be avoided as fraudulent conveyances. There was no evidence, according to the bankruptcy court, that IMTC received less than equivalent value for payments made to Erlanger. The district court affirmed on the basis of such findings and conclusions. We affirm.
 
 
 2
 This dispute is the result of events surrounding two international shipments of steel in May 1982 and June 1982. IMTC arranged to finance these shipments with Erlanger through a series of fairly sophisticated "back-to-back" agreements. Under these agreements, Intercontinental Metals (Deutschland) GmbH (IMD), a German subsidiary of IMTC, purchased steel from a Spanish manufacturer and sold it to Erlanger. Erlanger then, in a simultaneous transaction, sold the steel to IMTC. At no time during these transactions did Erlanger intend to resell the steel to any party other than IMTC. The transactional scheme was simply arranged in a manner that would facilitate IMTC's financial needs while allowing Erlanger to hold a portion of the steel as collateral for IMTC's obligation to repay on extended terms.
 
 
 3
 These agreements, two in number, called for Erlanger to pay a portion of the full purchase price upon receipt of the steel--80% for steel shipped aboard a vessel named the Hand Fortune. Erlanger was under no obligation to pay the balance. Upon receipt of these two steel shipments, Erlanger performed its obligations under the contracts, forwarding to IMD payments totaling $5,101,971.81.
 
 
 4
 When IMTC fell over $3 million behind in its payments, Erlanger sent notice that IMTC was in breach and, after an attempt was made to restructure both the credit terms and the terms of repayment, the steel held by Erlanger was liquidated at a price of approximately $2.5 million. IMTC was then given credit against its account for the sale of this steel. Unfortunately for IMTC, the steel was sold at a relatively low price, not due to the bad faith efforts of Erlanger, but because of a downward trend in world steel prices.
 
 
 5
 The appellant now challenges the outcome of a circular transfer involving IMD, IMTC, and Erlanger, prior to the liquidation of the steel. The effect of this transfer was to reduce IMTC's increasing debt obligation to Erlanger by approximately $2.2 million while simultaneously creating an intercompany debt arrangement between IMTC and IMD in the same amount.
 
 
 6
 The net result of the circular financing arrangement and subsequent liquidation of the steel was that Erlanger fell short approximately $200,000 of realizing its benefit of the bargain. IMTC now seeks to avoid the $2.2 million circular transfer, arguing that the transfers were made while IMTC was insolvent and IMTC did not receive equivalent value, i.e., enough steel for the money transferred. The bankruptcy court, however, found that the transfer had no net deleterious effect on the bankruptcy estate and that IMTC did receive equivalent value by way of steel and other consideration, including Erlanger's agreement to a prolonged payment schedule which IMTC was unable to meet. Accordingly, the court concluded that the transfers to Erlanger were valid and not voidable as fraudulent conveyances under Section 548(a)(2) of the Bankruptcy Code.
 
 
 7
 We believe the findings and conclusions of the bankruptcy court, as affirmed by the district court, are correct, and we affirm based on such findings and conclusions, which carefully canvassed all the issues in the proceeding and which properly resolved such issues. See Intercontinental Metals Corp. v. Erlanger & Co., Bankr. No. 84-0401 (W.D.N.C. June 4, 1987).
 
 
 8
 AFFIRMED.